**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| DEBRA JAN VAUGHN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. 3:08-cv-1920L |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b) and the order of the District Court filed on October 28, 2008. The findings, conclusions, and recommendations of the Magistrate Judge, as evidenced by his signature thereto, are as follows:

Procedural History: On September 19, 2005, plaintiff Debra Jan Vaughn (hereinafter "Plaintiff" or "Vaughn") filed an applications for disability insurance benefits ("DIB"), alleging a disability onset date of June 1, 2001, and claiming disability due to breathing problems including chronic bronchitis, asthma, and chronic obstructive pulmonary disease ("COPD"). (Administrative Record (hereinafter "Tr." at 15, 63, 77). Plaintiff's insured status expired on September 30, 2005. (Tr. 21 ¶ 7). Her claim was denied by the state agency initially and on reconsideration, after which she requested a hearing before an Administrative Law Judge ("ALJ").

The ALJ conducted a hearing on September 20, 2007, at which Plaintiff appeared with counsel and testified on her own behalf. (Tr. 377-397). The ALJ also received the testimony of

Vocational Expert ("VE") Dillon Snowden. *Id*. On October 26, 2007, the ALJ denied Plaintiff's request for benefits, finding, based on the testimony of the VE, that she was capable of making a successful adjustment to other work existing in significant numbers in the national economy during the period June 1, 2001 through September 30, 2005, the date on which she was last insured (Tr. 22-23). Plaintiff timely requested a review of the ALJ's decision by the Appeals Council and on May 30, 2008, the Appeals Council denied her request. (Tr. 3-5). Therefore, the ALJ's decision became the Commissioner's final decision for purposes of judicial review. *See Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002). Plaintiff filed her federal complaint on October 28, 2008. Defendant filed an answer on January 27, 2009. On May 13, 2009, Plaintiff filed her brief, followed by Defendant's brief on August 6, 2009.

      Standard of Review - Social Security Claims: When reviewing an ALJ's decision to deny benefits, the scope of judicial review is limited to a determination of: (1) whether the ALJ's decision is supported by substantial evidence in the record and (2) whether the proper legal standards were applied in evaluating the evidence. *Castillo v. Barnhart*, 325 F.3d 550, 551 (5th Cir. 2003) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In determining whether substantial evidence exists, the court reviews the entire record, but does not reweigh the evidence, retry the issues, or substitute its own judgment. *Villa*, 895 F.2d at 1022 (citations omitted). Where the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

Discussion: To prevail on a claim for disability insurance benefits, a claimant bears the burden of establishing that she is disabled, defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505. Substantial gainful activity is defined as "work that [i]nvolves doing significant and productive physical or mental duties; and [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

The ALJ uses a sequential five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. Under the first four steps, a claimant has the burden of proving that her disability prevents her from performing her past relevant work, but under the fifth step, the burden shifts to the Commissioner to prove there is other substantial gainful activity that the claimant can perform. *E.g., see Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989). This burden may be satisfied either by reference to the Medical-Vocational Guidelines ("Grid Rules") of the regulations, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2, or by expert vocational testimony or other similar evidence. *E.g., see Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). "A finding that a claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In the present case, the ALJ proceeded to step five. He noted that Vaughn was 52 years old on the date on which she was last insured, with a ninth grade education and past work as a seamstress. (Tr. 18, 21, 69, 380). He found that from June 1, 2001, the alleged onset date, through September 30, 2005, Plaintiff suffered from the severe impairments of bronchial asthma

3

and depression with anxiety, but that this combination of impairments does not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 17). He found that Vaughn would be unable to perform her past relevant work as a seamstress. (Tr. 21). Based on the testimony of the vocational expert and considering Vaughn's age, education, work experience, and a residual functional capacity ("RFC") for a modified range of unskilled light work, the ALJ found that there are a significant number of jobs in the national economy that Vaughn could perform, including the representative occupations of "small parts assembler" and "bench inspector". (Tr. 22). The ALJ therefore concluded that Vaughn was not under a disability and denied her claim for benefits. (Tr. 22-23).

Plaintiff argues that the ALJ improperly evaluated her credibility, failed to properly consider all of her impairments, improperly determined her residual functional capacity, and erred in finding that a significant number of jobs exist in the national economy that she could perform. For the reasons discussed below, the court finds that the ALJ's decision is supported by substantial evidence in the record and the proper legal standards were applied in evaluating the evidence.

**First**, Vaughn argues that the ALJ failed to properly evaluate her credibility. She alleges he did not consider her inability to afford her prescriptions in finding that she was noncompliant with her medication, and that he improperly assumed that because she had adopted her grandchildren, she was involved in their daily care. The ALJ found that "the medical reports show that [Plaintiff] was not always compliant with taking her prescribed asthma medications", and "the medical records show that from October 1, 2002, through September 30, 2005, [Plaintiff] was well enough to adopt and raise her pre-school aged grandchildren." (Tr. 20 ¶¶ 1-

4

2). After "considering all of the evidence of record" the ALJ found that Vaughn's "medically determinable impairments could reasonably be expected to produce the symptoms alleged, but that [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 20-21).

The ALJ found that during the relevant period- June 1, 2001 through September 30, 2005- Plaintiff's bronchial asthma was treated with a medicated inhaler and Albuterol with nebulizer; and her depression and anxiety were treated with Buspar. (Tr. 19-20). During this period, Plaintiff smoked approximately one pack of cigarettes per day. The ALJ noted that she was admitted to the hospital three times between June 1, 2001 and September 30, 2005 due to asthma exasperation, but that she was released the same day on each occasion, and that her asthma was stable and controlled with prescribed medications. (Tr. 20).

Vaughn was not always compliant with taking her prescribed asthma and anti-anxiety medications, as the ALJ found in his decision. (Tr. 20 ¶ 2, *see also* Tr. 167, 220, 226). Vaughn argues her non-compliance resulted from her inability to afford the medications. This assertion is corroborated in a June 9, 2003 treatment note, "unable to afford it [for] 3 months," which also states Vaughn had recently lost her job and suffered deaths in the family. (Tr. 220). She also claimed to be unable to pay for her medications at the hearing on September 20, 2007. (Tr. 381, 391). However, as pointed out by the Commissioner, the ALJ found other instances of non-compliance with medical advice. (Tr. 20 ¶ 1). The record shows that in April 1999 she smoked between half to one pack of cigarettes daily (*Id*. at 129), that she continued to smoke about a half pack a day in December 2002 (*Id*. at 223) and continued to smoke in October 2005 (*Id*. at 170). The ALJ ultimately considered Plaintiff's asthma in formulating a RFC for light work "that did

not expose her to concentrated levels of dust, chemicals, smoke, or other environmental contaminants" (Tr. 18). He found that "from June 1, 2001, through September 30, 2005 there are no medical reports to consider showing any work related performance limitations imposed by depression / anxiety." (Tr. 20). Additionally, "there is no record evidence, besides [Plaintiff's] testimony, that [s]he would be disabled with or without regular medical treatment." *Villa v. Sullivan*, 895 F.2d at 1024. "[A] factfinder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Id*. at 1024.

Vaughn also argues that adopting her grandchildren "is not dispositive of her involvement in their daily care." (Pl. Br. 6). The ALJ's decision refers to treatment notes from March 2002 and June 2003 that indicate Vaughn was experiencing significant stress in raising her two grandchildren. (Tr. 20, 220, 226). Additionally, treatment notes from October 2002 indicated that raising her grandchildren kept her "awake and tired", (Tr. 225), and in a November 2005 Daily Activity Questionnaire Vaughn stated her daily activities include getting her grandchildren up and ready for school. (Tr. 102). In the Fifth Circuit, an ALJ must give reasons for rejecting a claimant's subjective testimony only where the evidence clearly favors the claimant. *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). In this case, the ALJ considered the objective medical evidence, diagnoses and opinions, Plaintiff's age, education, and work history, and her subjective testimony in reaching his determination. (Tr. 17-22). His findings of fact are supported by substantial evidence.

**Second**, Vaughn argues the ALJ failed to properly consider all of her impairments and failed to apply the correct severity standards. She contends that the ALJ's failure to explicitly

6

refer to *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (citation omitted), or to discuss the *Stone* standard, was clear error. She further argues that her high blood pressure, vertigo, and neck pain were severe impairments that would have more than a minimal effect on her ability to work, and that the ALJ failed to consider her obesity. (Pl. Br. 8-9). The ALJ stated he "considered all symptoms alleged and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence". (Tr. 18). He found Vaughn to have the severe impairments of bronchial asthma and depression with anxiety, but did not find the other alleged impairments to be severe. (Tr. 17).

In her disability report dated July 26, 2007, Vaughn listed "breathing problems (COPD; chronic bronchitis; asthma)" as conditions which imposed limitations on her ability to work. (Tr. 77). Her application for disability insurance benefits listed chronic obstructive pulmonary disease, asthma, bronchitis, and possible emphysema as her disabling conditions. (Tr. 49). Evidence of neck and back pain in the record is minimal, appearing in progress notes on January 4, 2001 and April 6, 2001, before her alleged onset date in June 2001. (Tr. 109-110).

In *Stone v. Heckler* the court determined that "an impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (citation omitted); *see also Loza v. Apfel*, 219 F.3d 378, 391-92 (5th Cir. 2000) (noting that the Fifth Circuit continues to apply the definition of "not severe" from *Stone*); SSR 85-28 (S.S.A. 1985) (acknowledging and noting agreement with *Stone*'s definition of "not severe"). When a plaintiff's alleged impairment is mental, rather than physical, the ALJ must evaluate the plaintiff's "pertinent

symptoms, signs, and laboratory findings." § 404.1520a(b)(1). If, after this review of the plaintiff's medical records, the ALJ determines that the plaintiff has an impairment, the ALJ is required to rate the degree of functional limitation resulting from the impairment. § 404.1520a(b)(2). A plaintiff's degree of functional limitation is rated in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. § 404.1520a(c)(3). In applying this technique, "the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) [activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.]." § 404.1520a(e)(2).

Although the ALJ did not specifically refer to the *Stone v. Heckler* decision, he did apply the correct severity standard, citing to SSR 85-28, which was issued in partial response to the *Stone* decision. (Tr. 16). He addressed the mental health issues raised in Plaintiff's testimony and in the medical records and explained the weight he gave to such evidence. (Tr. 20 at the third and fourth paragraphs). He qualified the restrictions on Vaughn's activities caused by her mental impairments. (Tr. 18, ¶ 5). As with determining the disabling nature of a claimant's physical pain, it is within the ALJ's discretion to determine whether a non-exertional impairment is disabling. *E.g., see Spruill v. Astrue*, 299 Fed.Appx. 356, 358 (5th Cir. 2008).

The ALJ noted in his decision that Plaintiff has headaches, takes daily medication for her

high blood pressure, and that her high blood pressure leads to vertigo two to three times per week, causing dizzy spells that last two to three hours and lead her to vomit and lay down. (Tr. 19 paragraphs 2-3). Plaintiff's date last insured was September 30, 2005. (Tr. 21 ¶ 6). Much of the medical evidence proffered in support of Vaughn's argument is from October 2005. (Pl. Br. 8; Tr. 149, 151-52, 154-63, 165-72). The ALJ recognized that Plaintiff's records included medical reports that post-date her date last insured, stating that "those medical records are immaterial for Title II purposes of this decision because they do not show relatedness to the claimant's condition to the time of June 1, 2001, through September 30, 2005." (Tr. 20 ¶ 4). *E.g., see Torres v. Shalala*, 48 F.3d 887, 894 n.12 (5th Cir. 1995) ("evidence showing degeneration of the claimant's condition after his insured status expired is not relevant in analyzing the determination of whether he was disabled"); *see also Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1982).

Regarding Plaintiff's obesity, the medical records indicate that Vaughn is 63" tall. (Tr. 148). Her medical records indicate that between February 7, 2002 and September 23, 2005, Plaintiff gained 47 pounds, going from 141 lbs. to 188 lbs.[1] While Vaughn argues the ALJ "ignored" evidence by failing to mention her obesity, (Pl. Br. 9), the Commissioner is correct in noting that no doctor recommended any restrictions due to obesity, there is no evidence that her obesity caused her any limitations, and there is no evidence Vaughn sought treatment for her obesity. (Def. Br. 16). Vaughn argues the ALJ did not comply with SSR 02-1p. While she is correct in noting that her "medical records are rife with complaints of pain and fatigue", that pain

---

[1] Plaintiff's alleged disability onset date is June 1, 2001. On February 7 and 21, 2002, Plaintiff weighed 141 lbs. (Tr. 227, 229). On March 7, 2002, she weighed 146 lbs. (Tr. 226). On October 22, 2002, she weighed 148 lbs. (Tr. 225). On June 9, 2003, she weighed 167 pounds, (Tr. 220), and by September 23, 2005, weighed 188 pounds. (Tr. 216).

and fatigue is generally referred to in association with her respiratory problems, not her obesity.

"As with any other medical condition, we will find that obesity is a 'severe' impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities [...] We will also consider the effects of any symptoms (such as pain or fatigue) that could limit functioning." SSR 02-1p ¶ 6.  It is clear from the ALJ's decision that he considered Plaintiff's complaints of pain and fatigue and reviewed the medical evidence of record.  At most, his failure to specifically refer to Plaintiff's obesity in his decision is harmless error, and "error consisting of violation of *a Regulation* may be disregarded when a reviewing court concludes it is harmless." *Bean v. Barnhart*, 454 F. Supp.2d 616, 621-22 (E.D.Tex. 2006) (emphasis in original) (citations omitted).  Invoking the harmless error rule is appropriate when "remand would be an idle and useless formality." *Bean* at 622, citing *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 1430, 22 L.Ed.2d 709 (1969). In such cases, courts are not required to "convert judicial review of agency action into a ping-pong game." *Id*.  *See also Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir.2003) ("It is inconceivable that the ALJ would have reached a different conclusion on this record...."). The ALJ applied the correct legal standard in determining Plaintiff's severe impairments, and his findings are supported by substantial evidence.

**Third**, Vaughn argues that the ALJ improperly determined her mental residual functional capacity because the ALJ found her to have moderate difficulties in social functioning yet failed to include a corresponding social limitation in the RFC.  Vaughn cites *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988), for the proposition that "limitations that the ALJ finds to be

supported by the record must be included in the ALJ's RFC finding." This interpretation is misleading. *Morris* dealt with the hypothetical question posed to the VE by the ALJ, not with the RFC set forth in the ALJ's decision.[2]

In this case, the ALJ primarily based his finding of severe depression and anxiety on credibility given toward Vaughn's assertions, the fact that Vaughn had been assessed with the impairment, "albeit by a non-psychiatric/psychological physician", and the fact that on September 18, 2007, nearly two years after her date last insured, "she was clinically diagnosed by a licensed psychologist with major depression and generalized anxiety disorder with panic disorder." (Tr. 20 ¶ 3). The ALJ also found that "from June 1, 2001, through September 30, 2005, there are no medical reports to consider showing any work related performance limitations imposed by depression / anxiety." Further, he found that "even the September 18, 2007 psychological report does not show the claimant to have been debilitated from June 1, 2001, through September 30, 2005, due to depression and anxiety impairment." *Id*. The state agency medical consultants ("SAMC") considered Vaughn's impairments to be non-severe in reports dated November 21, 2005 and February 23, 2006. (Tr. 21, 194-95). The ALJ chose not to accord substantial weight to those opinions, as he ultimately found Vaughn to have more limitations than noted by the SAMCs. (Tr. 21). The ALJ also found that there were no medical reports showing work-related performance limitations imposed by Vaughn's depression or anxiety. (Tr. 20 ¶ 3).

---

[2]In *Morris*, the Plaintiff argued that the hypothetical was too abstract to reflect his particular disabilities, and the court held that the hypothetical reasonably incorporated the disabilities recognized by the ALJ. Plaintiff further argued that the jobs proffered by the VE were inconsistent with a remand order from the Appeals Council limiting Plaintiff's use of "motor vehicles and machinery". The court held this "may at most reflect a minor procedural impropriety" and did not render the ALJ's determination unsupported by substantial evidence.

In this case, the ALJ properly exercised his responsibility as fact finder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were supported by the record. "These are precisely the kinds of determinations that the ALJ is best positioned to make." *Falco*, 27 F.3d at 164. Therefore, the ALJ's mental RFC determination is supported by substantial evidence.

**Fourth,** Vaughn argues the ALJ erred in finding that a significant number of jobs exist in the national economy that she could perform. She argues that the VE's testimony is invalid because the ALJ's hypothetical questions to the VE were unsupported, due to a flawed credibility assessment, failure to include a social functioning limitation in the RFC, and failure to evaluate the impact of all of Vaughn's impairments. As the court has addresses these three issues above and found the ALJ applied the correct legal standards and his findings regarding each were supported by substantial evidence, Vaughn's fourth argument is without merit. Moreover, the hypothetical reasonably incorporated the impairments which the ALJ found Plaintiff to have, and Plaintiff's counsel had an opportunity to correct any defect in the hypothetical by mentioning additional limitations to the vocational expert. *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

The vocational expert testified that jobs existed, both in the national economy and in Texas, that an individual with the RFC described by the ALJ would be capable of performing. (Tr. 22, 395-396). "Since [Plaintiff] offered no evidence that she was incapable of performing the types of work that the ALJ determined were available and that she was capable of performing, [Plaintiff] failed to meet her burden of proof under the disability test." *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995), citing *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir.

1990). The ALJ properly relied on the testimony of the vocational expert in finding that there were a significant number of jobs in the national economy that Plaintiff could perform.

**RECOMMENDATION:**

For the foregoing reasons, it is recommended that the District Court enter its order AFFIRMING the decision of the Commissioner and judgment DISMISSING this action with prejudice. A copy of this recommendation shall be transmitted to counsel for the parties.

Signed this 2nd day of November, 2009.

_____
WM. F. SANDERSON, JR.
UNITED STATES MAGISTRATE JUDGE

NOTICE

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.